# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EZLINKS GOLF, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-07-080 PRW CCLD |
| | ) | |
| PCMS DATAFIT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 16, 2016
Decided: March 13, 2017
Corrected: March 21, 2017

## MEMORANDUM OPINION AND ORDER

*Upon Defendant PCMS Datafit, Inc.'s Partial Motion to Dismiss,*
**GRANTED.**

Stuart Brown, Esquire, Laura D. Hatcher, Esquire, DLA Piper LLP (US), Wilmington, Delaware, Jeffrey S. Torosian, Esquire (*pro hac vice*) (argued), Eric Roberts, Esquire (*pro hac vice*), DLA Piper LLP (US), Chicago, Illinois, Attorneys for EZLinks Golf, LLC.

William D. Johnston, Esquire, Kathaleen St. J. McCormick, Esquire, Mary F. Dugan, Esquire, Meryem Y. Dede, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Krista S. Schwartz, Esquire (*pro hac vice*), Jones Day, San Francisco, California, Margaret C. Gleason, Esquire (*pro hac vice*) (argued), Jennifer W. FitzGerald, Esquire (*pro hac vice*), Jones Day, Pittsburgh, Pennsylvania, Attorneys for PCMS Datafit, Inc.

WALLACE, J.

## I.  INTRODUCTION

Plaintiff EZLinks Golf, LLC ("EZLinks") filed this lawsuit against Defendant PCMS Datafit, Inc. ("PCMS"). EZLinks alleges PCMS fraudulently induced EZLinks into entering a Reseller Agreement and then breached that Reseller Agreement.

Before the Court is PCMS's Partial Motion to Dismiss. PCMS asserts that EZLinks's fraudulent-inducement claim rehashes its breach-of-contract claim. PCMS argues that Delaware law prohibits a party from recomposing a quintessential contract claim as a fraud claim. Because EZLinks's claims of fraudulent-inducement and breach-of-contract, though sufficiently distinct, have identical damages allegations, the Court **GRANTS** PCMS's Partial Motion to Dismiss.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In late 2013, EZLinks, through a third party, solicited a Request for Proposals ("RFP") from various companies for a new Point-of-Sale ("POS") system. [1] In mid-January 2014, PCMS responded (the "PCMS Proposal"). EZLinks thoroughly reviewed the PCMS Proposal, and the parties began a working relationship. [2] The parties first made direct contact on February 14, 2014. [3]

---

[1]    Pl.'s Compl. ¶¶ 7–9.

[2]    Pl.'s Compl. at ¶ 15.

And a phone conference followed on February 18, 2014.[4] EZLinks contends PCMS representatives stated then that "their point-of-sale solution could handle 'remote printing.'"[5]

PCMS provided EZlinks with sales demonstrations of PCMS's proposed POS system on March 6 and 13, 2014.[6] On March 18, 2014, several of EZLinks's directors had a technical meeting with PCMS to discuss the POS's specifics.[7] The parties had further meetings on April 22, April 30, and May 28, 2014.[8]

The parties' CEOs met on August 1, 2014. There, PCMS's CEO made the following statements: (1) PCMS could complete the project for the POS system to meet EZLinks's current customer demands within seven months, with "Phase 0" completed by November 2014, "Phase 1" completed by January 5, 2015, and "Phase 2" completed by March 2015; and (2) PCMS could complete the project for the POS System to meet EZLinks's current customer demands on a budget of $1.4 million.[9]

---

[3] Pl.'s Compl. at ¶ 16.

[4] Pl.'s Compl. at ¶ 16.

[5] Pl.'s Compl. at ¶ 16.

[6] Pl.'s Compl. at ¶ 17.

[7] Pl.'s Compl. at ¶ 18.

[8] Pl.'s Compl. at ¶ 19.

[9] Pl.'s Compl. at ¶ 21.

EZLinks now contends that PCMS made these statements to fraudulently induce EZLinks into signing a Reseller Agreement. [10]

Based, in part, on the PCMS Proposal, and the parties' conversations on February 18, 2014, and August 1, 2014, EZLinks awarded its new POS contract to PCMS. The parties signed a Reseller Agreement on October 9, 2014 (amended July 30, 2015). [11] That Reseller Agreement contemplated that the parties would enter into various "statements of work" ("SOWs") providing EZLinks updates on PCMS's performance. [12]

PCMS allegedly fell behind schedule and ran over budget. In early 2015, EZLinks expressed its frustration with the project's timing and overruns. [13] In February 2015, PCMS provided a scaled-back beta POS system. It didn't work. [14] In September 2015, PCMS delivered a second beta POS system. It also was allegedly defective. [15] Then PCMS billed EZLinks $1.8 million for its work; exceeding the earlier $1.4 million projection. [16]

---

[10] *See generally* Pl.'s Compl. at ¶¶ 12–13, 16.

[11] Pl.'s Compl. at ¶ 23.

[12] Pl.'s Compl. at ¶ 24.

[13] Pl.'s Compl. at ¶ 28.

[14] Pl.'s Compl. at ¶ 29.

[15] Pl.'s Compl. at ¶ 30.

[16] Pl.'s Compl. at ¶ 31.

The parties entered into separate SOWs, numbered 2–8, to track PCMS's continued work.[17] SOWs 2–7 set deadlines for work associated with each. And under the SOWs' terms, PCMS had to notify EZLinks by February 29, 2016, if it would not or could not meet those respective deadlines.[18] PCMS neither met the deadlines nor timely notified EZLinks that it would fail to meet them.[19]

On May 19, 2016, EZLinks, fed up with the delays, terminated the Reseller Agreement. EZLinks rejected PCMS's outstanding invoices, demanded a return of the nearly $1.6 million it had already paid out, and triggered the parties' pre-suit dispute resolution measures.[20] Dispute resolution failed.

EZLinks filed this suit on July 12, 2016. EZLinks's complaint has two counts: Breach of Contract and Fraudulent Inducement. EZLinks describes the parties' relationship in two phases: pre- and post-Reseller Agreement. EZLinks contends the PCMS Proposal, and PCMS's February 18 and August 1, 2014 assurances constituted false statements and misrepresentations.[21] It says these pre-contractual statements fraudulently induced EZLinks into signing the Reseller

---

[17]   Pl.'s Compl. at ¶ 32.

[18]   Pl.'s Compl. at ¶ 33

[19]   Pl.'s Compl. at ¶ 34.

[20]   Pl.'s Compl. at ¶ 38.

[21]   Pl.'s Compl. at ¶¶ 12–13, 47–53.

-4-

Agreement. EZLinks claims further that, post-signing, PCMS breached the Reseller Agreement by not following the SOWs.

PCMS answered EZLinks's Complaint and filed this Partial Motion to Dismiss under this Court's Civil Rule 12(b)(6). PCMS seeks to dismiss EZLinks's fraudulent-inducement claim as a redundant breach-of-contract claim.

At oral argument, the Court requested supplemental briefing on three things: (1) whether rescission or rescissory damages were requested or applicable; (2) whether anything in the Reseller Agreement prohibited or limited available damages; and (3) whether EZLinks could "identify the specific damages requested under each claim and how they differ in the complaint as it is drafted now."[22]

## III. PARTIES' CONTENTIONS

PCMS contends EZLinks's fraud claim fails for two reasons.[23] First, PCMS argues that the pre-contractual statements' alleged falsities are premised solely on PCMS's later alleged failures to perform under the agreement – it is merely a reclad breach-of-contract claim. As such, EZLinks fails to allege fraud damages

---

[22] Mot. to Dismiss Hr'g Tr., at 56.

[23] Def.'s Opening Br. in Supp. of Mot. to Dismiss at 1 [hereinafter Def.'s Br.]. Because the Court grants PCMS's Motion to Dismiss for EZLinks's failure to separate its damages claims, the Court need not fully determine if EZLinks adequately pled fraud under Superior Court Civil Rule 9(b).

-5-

other than those based on expectations in the agreement. And so the claims are indistinguishable.[24]

Second, PCMS argues that EZLinks did not adequately plead fraudulent inducement, namely justifiable reliance and false representations of material fact. Even if EZLinks's allegations are given full credit, PCMS says the allegations do not meet the pleading standard required for fraudulent inducement.

EZLinks counters that its fraudulent-inducement claim is distinct. According to EZLinks, as a part of the negotiation process PCMS agreed to customize the POS system by adding functions to standard capabilities PCMS claimed were already in existence. EZLinks argues that PCMS "grossly misrepresented [the POS system's] capabilities" and that few of the "standard" functions were in fact standard.[25] EZLinks claims PCMS knew it would have to build these functions into the system, but did not tell EZLinks. It also argues that PCMS misrepresented the budget and time necessary to develop the software and that PCMS knew this when the misrepresentation was made.[26]

---

[24]     Def.'s Br. at 1.

[25]     Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at 1 [hereinafter Pl.'s Opp.].

[26]     Pl.'s Opp. at 2.

EZLinks argues PCMS's statements "defrauded [it] to get [it] to sign the deal, making this a classic fraudulent inducement case."[27] EZLinks says that the obligations arising under the Reseller Agreement are based on the assumption that the software functioned as represented by PCMS. Yet, EZLinks posits, PCMS knew: that the software did not have the required capabilities at the time of the Reseller Agreement; that the required capabilities could not be developed on the timeline given before the Reseller Agreement was entered into; that PCMS made the representations to induce EZLinks to enter into the Reseller Agreement; and that PCMS wrongly profited from that agreement.[28] Its two claims are distinct, EZLinks says. And, therefore, it may seek damages via both.

## IV. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[29]

---

[27] Pl.'s Opp. at 2–3.

[28] Pl.'s Opp. at 10–12.

[29] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (outlining standard for motions to dismiss).

-7-

But the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[30]

The Court must accept as true all well-pleaded allegations for Rule 12(b)(6) purposes.[31] And every reasonable factual inference will be drawn in the non-moving party's favor.[32] If the claimant may recover under that standard of review, then the Court must deny the motion to dismiss.[33] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[34]

Delaware law requires plaintiffs to plead fraud and misrepresentation claims with particularity—a heightened pleading standard.[35] To satisfy Civil Rule 9(b), a complaint must allege:

> (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain

---

[30]   *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[31]   *Anderson*, 2011 WL 3654531, at *2.

[32]   *Wilmington Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[33]   *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[34]   *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[35]   Super. Ct. Civ. R. 9(b).

by making the representations. Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[36]

## V. DISCUSSION

For both a breach-of-contract claim and a tort claim to coexist in a single action, "the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract."[37] PCMS argues that the issue here is whether the allegedly false statements were independent of the Reseller Agreement's terms. Generally, a fraud claim only survives if it is based on some conduct distinct from that constituting a breach of contract.[38] PCMS contends that all three of EZLinks's assertions are "inextricably linked to contractual duties and obligations."[39] And, PCMS posits, all three theories of the alleged falsity are "based entirely on EZLinks' expectations regarding – and PCMS' performance under – the Reseller Agreement and Statements of Work."[40] So, because the

---

[36] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1049 (Del. Ch. 2006).

[37] *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007) (quoting *McKenna v. Terminix Int'l Co.*, 2006 WL 1229674, at *2 (Del. Super. Ct. Mar. 13, 2006)). In *Brasby*, this Court dismissed certain fraud allegations because the alleged actionable "statements and assurances relate[d] directly to the performance of the contract and [we]re better addressed by applicable contract law." *Id.*

[38] *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016).

[39] Def.'s Br. at 14.

[40] Def.'s Br. at 14–15.

fraudulent-inducement claim is based solely on PCMS's alleged failure to deliver the POS system as EZLinks expected them to, the Court should dismiss the claim.[41]

Not so, says EZLinks. It complains it was fraudulently induced to enter into the Reseller Agreement with PCMS by: (1) statements in PCMS's RFP Response;[42] (2) PCMS's alleged statement on February 18, 2014 about remote printing;[43] and (3) PCMS's alleged statement on August 1, 2014 about the project's timing and cost of the project.[44]

## A. PCMS's Statements in the RFP Responses

PCMS first contends that Complaint Paragraphs 11–13 merely allege that the software actually delivered under the contract did not meet EZLinks's expectations, not fraudulent inducement to enter the contract. To maintain its contention, PCMS cites to various paragraphs of the Complaint.[45] PCMS alleges that all of the allegations in Complaint Paragraphs 12 and 13 simply criticize the

---

[41]    Pl.'s Compl. at ¶¶ 27, 36–38, 44, 48–50.

[42]    Pl.'s Compl. at ¶¶ 11–13.

[43]    Pl.'s Compl. at ¶ 16.

[44]    Pl.'s Compl. at ¶¶ 22, 37.

[45]    For example, "PCMS staff ultimately were unable to define the user roles requested by EZLinks, even after the investment of substantial time and cost," and "PCMS committed to providing 'API access to system data for manipulation by other 3d party solutions,' yet charged EZLinks an additional, unquoted amount when EZLinks requested API access upon receiving the preliminary, defective product." Pl.'s Compl. at ¶ 12(d), (m).

product actually delivered; they say nothing of what was stated in the RFP Response.[46]

PCMS correctly notes that "Delaware courts will not permit a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by intoning *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract."[47] As Paragraphs 12 and 13 describe only the ways the delivered software failed to meet EZLinks's expectations, they merely "tell[] the story of the defendant's failure to perform under the contract."[48] Those specific issues EZLinks has with the product are, of course, "better addressed by applicable contract law."[49]

## B. PCMS'S FEBRUARY 18, 2014 ASSURANCES

EZLinks alleges that during a phone call on February 18, 2014, PCMS "stated that their point-of-sale solution could handle 'remote printing' . . . which they knew to be false."[50] PCMS argues that EZLinks was told that "any written or oral communication" was not "a contractually binding promise or

---

[46]   Def.'s Br. at 16.

[47]   *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012).

[48]   *Id.*

[49]   *Brasby*, 2007 WL 949485, at *8.

[50]   Pl.'s Compl. at ¶ 16.

representation."[51]  Again, PCMS states, EZLinks's issue with the lack of a remote printing feature was due to the delivered software failing to function as EZLinks believed it would, not fraudulent inducement of the contract.[52]

### C. PCMS'S AUGUST 1, 2014 PROMISES

EZLinks claims that on August 1, 2014, PCMS estimated it could complete the project in three phases "on a budget of $1.4 million."[53]  EZLinks says that PCMS made that representation when "PCMS in fact knew that the total timing and cost of the project would far exceed what PCMS had decided to tell EZLinks."[54]  According to EZLinks, the PCMS Proposal, and the February 18 and August 1 statements were "specific, knowingly false statements on which [PCMS] intended [EZLinks] to rely."[55]

PCMS argues that EZLinks uses this allegation to support both the breach-of-contract and fraud claims.[56]  But, suggests PCMS, the cost and scheduling were

---

[51]     Transmittal Aff. of Meyem Y Dede in Supp. of Def.'s Br. Ex. C. at 3, ¶ 1 ("The responses in this document are provided as guidance . . . . Notwithstanding any statement to the contrary . . . this document . . . does not constitute any offer capable of acceptance or a contract or binding agreement between the parties or a contractually binding promise or representation.").

[52]     Def.'s Br. at 17–18.

[53]     Pl.'s Compl. at ¶¶ 22, 37.

[54]     Pl.'s Compl. at ¶ 37.

[55]     Pl.'s Opp. at 14

[56]     Pl.'s Compl. at ¶ 36 ("By April 2016, PCMS was nowhere near being able to deliver the POS System contemplated by the Reseller Agreement.  To do so would require at least three

-12-

terms of the parties' final written agreement to be fulfilled, not inducements leading to creation of that written agreement.[57] As such, this fraud allegation describes no duty owed to EZLinks independent of the contract; and thus, says PCMS, it cannot serve as the basis for a separate fraud claim.[58]

## D. BREACH-OF-CONTRACT VS. FRAUD CLAIMS

Both EZLinks and PCMS agree that an alleged misrepresentation's timing is key to distinguishing fraudulent inducement from breach of contract.[59] That is, the question of whether or not a fraudulent-inducement claim stands is whether the alleged conduct "go[es] directly to the inducement of the contract, rather than its performance."[60]

Courts often focus on when the fraudulent conduct is alleged to have occurred.[61] "Allegations related to the inducement to contract have been recognized as 'separate and distinct' conduct, while those focused on inducement

---

more years and $6 million of additional work, both of which vastly exceeded the time and budget representations made by PCMS in the 8/1/14 Meeting."); *id.* at ¶¶ 27, 31 ("PCMS Fails to Timely Deliver a POS System and Greatly Exceeds Budget Estimate.").

[57]     Def.'s Br. at 19–20.

[58]     Def.'s Br. at 20.

[59]     Pl.'s Opp. at 14; Def.'s Br. at 14, n. 9.

[60]     *Brasby*, 2007 WL 949485, at *7.

[61]     *Hiller & Arban, LLC*, 2016 WL 3678544, at *4; *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8.

of continued performance are generally impermissible."[62] And under Delaware law, a plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."[63] Nor can a plaintiff devise a claim for fraud "simply by adding the term 'fraudulently induced' to a complaint."[64] To the contrary, casting an alleged failure to comply with a contract as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is "exactly the type of bootstrapping [Delaware c]ourt[s] will not entertain."[65]

In its best light, EZLinks's fraudulent-inducement claim is read to allege that PCMS intentionally and knowingly: (1) made numerous false pre-contract representations of its then-extant product; (2) engaged in a pre-contract concealment of its inability to create EZLinks's proposed product; (3) greatly undersold project times and costs; and (4) did all of this to induce EZLinks into

---

[62]   *Hiller & Arban, LLC,* 2016 WL 3678544, at *4 (citing *Cornell Glasgow, LLC,* 2012 WL 2106945, at *8)).

[63]   *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010) (citing *Iotex Communications, Inc. v. Defries,* 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998)).

[64]   *Narrowstep, Inc.,* 2010 WL 5422405, at *15 (quoting *Iotex Communications, Inc.,* 1998 WL 914265, at *5 ("[A breach-of-contract claim] cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform.").

[65]   *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.,* 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004).

-14-

entering the Reseller Agreement.[66] EZLinks has met the heightened pleading standard imposed by Rule 9(b) to address the time, place, and contents elements of fraud claims. So too, under the specific circumstances presented here, it has pleaded enough to distinguish its fraudulent-inducement from its breach-of-contract claim.[67] But that is not all that might doom EZLinks's fraud claim.

### E. IDENTICAL DAMAGES CANNOT SUSTAIN EZLINKS'S SEPARATE COUNTS

Even if one were to assume here that EZLinks's two claims are distinct, it still must plead separate damages. Failure to plead separate damages is an independent ground for dismissal.[68] Here EZLinks's damages claims and calculations for the alleged fraudulent inducement and breach of contract appear materially identical. And EZLinks's mere addition of punitive damages to its fraudulent inducement charge is not enough to distinguish it from the contract

---

[66] Pl.'s Compl. at ¶¶ 22, 37.

[67] *ITW Global Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, 2015 WL 3970908, at *6 (Del. Super. Ct. June 24, 2015) ("Allegations that are focused on *inducement* to contract are 'separate and distinct' conduct.") (emphasis in original). *See also Narrowstep, Inc.*, 2010 WL 5422405, at *15 (denying dismissal based on defendant's bootstrapping argument while observing: "[Defendant] repeatedly lied to [Plaintiff] at multiple steps in the Integration process in order to strip [Plaintiff] of its valuable assets with no intention of closing the merger. This conduct, if true, goes beyond a mere intention not to comply with the terms of the Agreement. . . . The Agreement is not the source of [Plaintiff's] fraud claim, but rather the instrument by which [Defendant] perpetrated its broader scheme to loot [Plaintiff].").

[68] *Cornell Glasgow, LLC*, 2012 WL 2106945, at *9 ("[Plaintiff] has failed to plead fraud damages separate and apart from its breach damages. The fraud claim, therefore, must be dismissed for this reason as well."). *See also ITW Global Invs. Inc.*, 2015 WL 3970908, at *5.

damages.[69] Because EZLinks "fail[ed] to separate the damages incurred by any fraudulent conduct from those incurred by any breach of contract," the claim for the former should be dismissed.[70]

To counter, EZLinks argues that this Court's decision in *ITW Global Investments* controls this issue.[71] In *ITW*, the Court noted that rescission and rescissory damages for money paid to defendants under the contract are not "barred as a 'rehash' of the Complaint's breach of contract damages."[72] In EZLinks's complaint, however, it alleges only damages "in an amount to be proved at trial, including punitive damages, attorney's fees, and costs" regarding

---

[69] *See, e.g., Hiller & Arban, LLC*, 2016 WL 3678544, at *4–5. *See also AFH Hlding. Advisory, LLC v. Emmaus Life Scis., Inc.*, 2013 WL 2149993, at *12-13 (Del. Super. Ct. May 15, 2013) (granting partial summary judgment on fraud and fraud-in-the-inducement claims while noting that "[t]he only claims for relief unique to the fraud claims are for punitive damages . . . . The Court finds that Emmaus's breach of contract claims and fraud claims are based on the same operative facts. Additionally, Emmaus has not demonstrated a *prima facie* basis for damages for fraud or fraud in the inducement, separate and apart from any compensatory damages or declaratory relief to which Emmaus may be entitled for breach of contract . . . .").

[70] *Khushaim v. Tullow, Inc.*, 2016 WL 3594752, at *6–7 (Del. Super. Ct. June 27, 2016) (dismissing claim for fraud where plaintiff "merely pled identical damages"); *ITW Global Invs., Inc.*, 2015 WL 3970908, at *5 (dismissing claim for fraud where plaintiff pleaded materially identical damages); *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8 (dismissing fraud claims where breach-of-contract claim alleged identical damages); *4C, Inc. v. Pouls*, 2014 WL 1047032, at *7 (D. Del. Mar. 5, 2014) ("A plaintiff alleging both fraudulent misrepresentation and breach of contract must prove that the damages pled under each cause of action are distinct."); *Greenstar, LLC v. Heller*, 934 F.Supp.2d 672, 697 (D. Del. 2013) (claim for fraud failed because plaintiff failed to demonstrate damages caused by the fraud "separate and apart from" the alleged breach of contract damages).

[71] *ITW Global Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, 2015 WL 3970908 (Del. Super. Ct. June 24, 2015.

[72] *Id.* at *7, n. 103.

the fraudulent-inducement claim,[73] and "pre- and post- judgment interest on its claim, in addition to the attorney's fees and costs expended for this lawsuit" regarding the breach-of-contract claim.[74] Notably, EZLinks's count for fraud in the inducement pleads neither for rescission nor rescissory damages as did the *ITW* complaint.[75] Thus, reliance on *ITW Global Investments* on this basis is unavailing.

"Delaware courts have consistently held that to successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's action."[76] And those fraud damages allegations can't simply "rehash" the damages that were allegedly caused by the claimed breach of contract.[77]

EZLinks contends that its damages claims, at this stage, are distinct. EZLinks cites *JCM Innovation Corp. v. FL Acquisition Holdings, Inc.*[78] In *JCM*, plaintiffs alleged defendants defrauded them into signing a purchase agreement.

---

[73]    Pl.'s Compl. at ¶ 53.

[74]    Pl.'s Compl. at ¶ 46.

[75]    *Compare id.*, *with ITW Global Invest., Inc.*, 2015 WL 3970908, at *5, *7, n. 103.

[76]    *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8 (quoting *Dalton v. Ford Motor Co.*, 2002 WL 338081, at *6 (Del. Super. Ct. Feb. 28, 2002)).

[77]    *Id.* at *8 (citing *Albert v. Alex Brown Mgt. Serv., Inc.*, 2005 WL 2130607, at *7 (Del. Ch. Aug. 26, 2005)).

[78]    *JCM Innovation Corp. v. FL Acquisition Hldgs., Inc.*, 2016 WL 5793192 (Del. Super. Ct. Sept. 30, 2016).

Plaintiffs pled a litany of claims, including fraud and breach of contract. And it appears that the *JCM* plaintiffs alleged identical damages calculations for both types.[79]

But *JCM* hardly stands for the proposition that identical damages claims in breach-of-contract and fraudulent-inducement counts are permissible and allow both counts to coexist in one action. In *JCM*, the parties' agreement's indemnification provisions prohibited all of JCM's contract claims. By operation of those express contractual provisions, only JCM's fraud and unjust enrichment claims remained.[80] Not so here.

## VI. CONCLUSION

EZLinks has failed to establish – even after oral argument and supplemental briefing – how its alleged fraudulent-inducement and breach-of-contract damages are distinct. EZLinks has merely pleaded identical damages. Fraud-induced damages cannot mirror breach-of-contract damages.[81] And so, both the

---

[79] *See JCM Innovation Corp.*, 2016 WL 5793192, at *9.

[80] *JCM Innovation Corp.*, 2016 WL 5793192, at *7 ("The Exclusive Remedy Provision, however, bars JCM's contractual claims."); *id.* (noting unjust enrichment claim would survive because it "is a quasi-contractual claim . . . a claim that proceeds under the theory that no contract exists."); *id.* at *9 ("JCM alleges Defendants repeatedly misled it throughout the negotiation and signing. If true, then the Agreement is the 'instrument by which Defendants perpetrated its broader scheme' to defraud JCM. At this juncture, JCM's fraud claim is different from its breach of contract claim.") (citing *Narrowstep, Inc.*, 2010 WL 5422405, at *15).

[81] *See ITW Global Invs. Inc.*, 2015 WL 3970908, at *5 (dismissing plaintiff's fraud claim "[b]ecause ITW has pleaded materially identical damages for $85 million, they fail to separate the damages incurred by any alleged fraudulent misrepresentation and any alleged breach of

fraudulent-inducement and breach-of-contract counts cannot survive. PCMS's Partial Motion to Dismiss is **GRANTED.** Count II (Fraudulent Inducement) of EZLinks's Complaint is **DISMISSED.**

   **IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

---

contract under the SPSA"). *See also Khushaim*, 2016 WL 3594752, at *6 (dismissing a fraud claim where the plaintiff's alleged fraud damages were "a copy-and-paste recitation of [the] contract damages.").